IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
NORTHERN DIVISION

TROYDREIKUS LEWIS,                                                                    PLAINTIFF
ADC #154242

v.                                        1:14CV00074-JTK

R. RAMSEY., et al.                                                                    DEFENDANTS

## MEMORANDUM AND ORDER

### I.     Introduction

Plaintiff Troydreikus Lewis is a state inmate incarcerated at the Maximum Security Unit of the Arkansas Department of Correction (ADC).  He filed this pro se action pursuant to 42 U.S.C. § 1983, alleging failure to protect in connection with an incident which occurred at the Grimes Unit on March 20, 2014 (Doc. No. 2.)  Plaintiff asks for monetary and injunctive relief from Defendants.

This matter is before the Court on the Defendants' Motion for Summary Judgment (Doc. No. 25).  Plaintiff has filed a Response, Brief in Support, and Statement of Disputed Facts (Doc. Nos. 30-32), in addition to a Motion to Dismiss some of the Defendants (Doc. No. 29).

According to his Complaint, Plaintiff was shot by Justin Jones in October, 2012, prior to his incarceration in the ADC (Doc. No. 1, p.3).  On March 20, 2014, while incarcerated at the Grimes Unit, Plaintiff saw Jones in the barracks, and attempted to tell Defendant Baker that Jones should not be housed near him. (Id., p. 4) Baker, however, told Plaintiff to remove himself from the door where he stood, and failed to report Jones as Plaintiff's enemy. (Id.)  As a result, the two inmates were involved in a fight later that day. (Id.) Two days later, Defendant Davis issued disciplinary charges against Plaintiff for battery, assault, provoking a fight, and failure to obey verbal and/or written orders of staff.  (Id.)  Defendant Banister presided over Plaintiff's disciplinary hearing, and

Plaintiff told her that Jones should not have been in his barracks. (Id.) Despite this, Banister found Plaintiff guilty of all charges and sentenced him to thirty days punitive isolation, privilege restrictions, and a reduction in class. (Id., p. 5) Plaintiff also claims that inmate Jones told Defendant Ramsey that he should not be housed in the same barracks as Plaintiff, because of a no-contact order issued by the Miller County Circuit Court. (Id., pp. 3, 5)

## II.     Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998), quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other citations omitted). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

### A.     Motion to Dismiss

The Court will grant Plaintiff's Motion to Dismiss Defendants Ramsey, Davis, Townsend, and Bannister (Doc. No. 29).

### B. Sovereign Immunity

The Court also agrees with remaining Defendant Baker that sovereign immunity requires dismissal of Plaintiff's monetary claims against him in his official capacity. Will v. Michigan Dep't. of State Police, 491 U.S. 58, 65 (1989); Murphy v. State of Arkansas, 127 F.3d 750, 755 (8th Cir. 1997).

### C. Qualified Immunity

Defendant Baker asks the Court to dismiss the claims against him in his individual capacity, based on qualified immunity, which protects officials who act in an objectively reasonable manner. It may shield a government official from liability when his or her conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity is a question of law, not a question of fact. McClendon v. Story County Sheriff's Office, 403 F.3d 510, 515 (8th Cir. 2005). Thus, issues concerning qualified immunity are appropriately resolved on summary judgment. See Mitchell v. Forsyth, 472 U.S. 511, 526 (1985) (the privilege is "an *immunity from suit* rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial.").

To determine whether defendants are entitled to qualified immunity, the courts generally consider two questions: (1) whether the facts alleged or shown, construed in the light most favorable to the plaintiff, establish a violation of a constitutional or statutory right; and (2) whether that right was so clearly established that a reasonable official would have known that his or her actions were unlawful. Pearson v. Callahan, 555 U.S. 223, 232 (2009).[1] Defendants are entitled to qualified

---

[1] Courts are "permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances

3

immunity only if no reasonable fact finder could answer both questions in the affirmative. <u>Nelson v. Correctional Medical Services</u>, 583 F.3d 522, 528 (8th Cir. 2009).

In order to support an Eighth Amendment claim for relief, Plaintiff must allege and prove that he was incarcerated under conditions posing a substantial risk of serious harm, and that Defendant recklessly disregarded that risk. <u>Jackson v. Everett</u>, 140 F.3d 1149, 1151-1152 (8th Cir. 1998). In his deposition testimony, Plaintiff stated that he observed inmate Jones coming into the hallway on March 20, 2014, and had no prior knowledge that he was incarcerated at the ADC or the Grimes Unit. (Doc. No. 25-2, p. 8) He then started beating on the door of his barracks and tried to yell to Defendant Baker that Jones should not be allowed into his barracks. (<u>Id</u>., p. 10) He did not know if Baker heard him through the door, did not inform any other officer about inmate Jones, and did not complete a form to place Jones on his enemy alert list. (<u>Id</u>., pp. 14, 16, 20, 30) Plaintiff hit inmate Jones in the face as he came toward him in the barracks, and the two fought until Plaintiff walked away. (<u>Id</u>., pp. 11,12) No officers observed the fight, and neither inmate reported the fight. (<u>Id</u>., p. 12) The two inmates remained housed together in the barracks for two days, until Defendant Davis noticed injuries to Jones' face during a security check on March 22, 2014. (<u>Id</u>., p. 17) Although Plaintiff first denied participating in the fight, he later pleaded guilty to battery, assault, and failure to obey staff, and also was convicted of provoking a fight. (Id., p. 19.

In his Response to Defendants' Motion, however, Plaintiff states that he informed Defendant Baker that he had a protection order from Miller County against inmate Jones, and that Defendant Baker placed Plaintiff in danger when he allowed Jones to enter the barracks (Doc. No. 30). Plaintiff also states Defendant Baker was only a few feet away from the door to the barracks when Plaintiff

---

in the particular case at hand." <u>Nelson</u>, 583 F.3d at 528 (quoting <u>Pearson v. Callahan</u>, 555 U.S. at 236).

4

yelled at him, but that Baker "blew" him off. (Doc. No. 31) Plaintiff states a dispute of material fact exists concerning whether he informed Baker about the trouble with inmate Jones, and whether Baker had any type of hearing issues at the time. (Doc. No. 32)

Based on the submissions by the parties, the Court finds Defendant is entitled to qualified immunity. Plaintiff admitted in his deposition that he did not list Jones as an enemy on an ADC enemy alert list, and did not know that inmate Jones was at the Unit until he saw him through a window or door of the barracks. (Doc. No. 25-5, pp. 8, 14) At that point, Plaintiff stated he yelled to Defendant Baker that Jones was not supposed to be around him. (Id., p. 8) He also admitted that he did not know if Baker heard him, that he told no other officer of the problems, and then confronted inmate Jones once he entered the barracks. (Id., pp. 11,16, 30) In the grievance he filed about the incident, Plaintiff wrote:

> On 3/20/14 I Troydreikus Lewis...was on the phone and happen to walk to the door a notice inmate Justin Jones standing in the vestibule with his property. So I yelled through the door that he couldn't be in here with me. But the guard to me to get behind the line, I did what he said "Cpl Baker." So I left and told some inmates that Jones was the person who had shot me and that he was going to try and fight me because of the time he got for what he did. Well it was time for me to work out so I went to the shower with my gloves to do pull ups. Thats when I noticed Jones coming towards me. So I paniked and hit him. We started fighting and all I could think about is the fear I had and I was trying get him away from me. I had hit him so hard that I swolling his face. I didn't tell anyone after that because I didn't want to get in anymore trouble.

(Doc. No. 25-3, p. 1) In his grievance appeal, Plaintiff further stated that he did not list Jones as an enemy with the ADC, because he "didn't know he was here until the day of the altercation. My life was in danger and Cpl Baker failed to comply with what I was trying inform him about." (Id., p. 2)

Although Plaintiff also insists in his Response that he told Baker of the free world protection order involving inmate Jones, he does not state whether this occurred at the same time that he yelled

5

to Baker through the door to the barracks that he should not allow Jones to come into the barracks. Even assuming Baker heard Plaintiff, it is undisputed that: 1) Jones was not listed as Plaintiff's enemy on an ADC alert list; 2) Plaintiff did not attempt to contact any other officer with his concerns; 3) Plaintiff was the aggressor by initiating the fight and pleaded guilty to three of the disciplinary charges against him; 4) neither inmate told any officers about the altercation, and 5) they both continued to live in the same barracks for the next two days. Given all this undisputed evidence, the Court finds that no reasonable fact finder could find that the facts alleged or shown, construed in the light most favorable to Plaintiff, established a violation of a constitutional or statutory right by Defendant Baker.

In addition, any allegation that Defendant Baker violated ADC policy by failing to complete an enemy alert list on Plaintiff's behalf, fails to state a constitutional claim for relief. "[T]he mere violation of a state law or rule does not constitute a federal due process violation." Williams v. Nix, 1 F.3d 712, 717 (8th Cir. 1992).

### III.  Conclusion

IT IS, THEREFORE, ORDERED that:

1. Plaintiff's Motion to Dismiss Defendants Ramsey, Davis, Townsend, and Banister (Doc. No. 29) is GRANTED.

2. Defendant Baker's Motion for Summary Judgment (Doc. No. 25) is GRANTED.

3. Plaintiff's claims against Defendants Ramsey, Davis, Townsend, and Banister are DISMISSED without prejudice.

4. Plaintiff's claims against Defendant Baker are DISMISSED with prejudice.

An appropriate Judgment shall accompany this Memorandum and Order.

IT IS SO ORDERED this 21st day of April, 2015.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE